May it please the court, my name is Benjamin Kutcher and I represent the appellant Loretta Hoyt. I'd like to reserve four minutes for rebuttal. As an initial matter, let me thank the court for agreeing to consider this appeal on an expedited basis. In this negligence case arising under Washington law, the district court erred by taking away from the jury the factual inquiry of whether the risk of harm to plaintiff from take-home exposure to a known hazardous toxic substance was reasonably foreseeable to the defendant in the 1950s. And in taking that issue away from the jury, the district court committed three interrelated errors in its foreseeability analysis. First of all, it applied a foreseeability standard from a Sixth Circuit case applying Kentucky law, which has never been the law in Washington and which is directly contrary to Washington's foreseeability analysis. Secondly, it focused on the lack of a published epidemiologic study on the specific harm mesothelioma from take-home asbestos exposure as opposed to focusing on the risk that gave rise to the plaintiff's harm. And finally, it ignored defendant-specific evidence unique to the defendant, Lockheed, showing actual knowledge of the hazards of asbestos in the 1950s and actual knowledge of the hazards associated with allowing asbestos to be taken off the premises and into the workman's home. Going back to the first issue, the district- Before you go through that recital, can I ask this question? We're here to apply Washington law? Yes, Your Honor. Has the Washington Supreme Court addressed the issue of take-home liability? Well, Your Honor, the Washington Supreme Court has not addressed the issue of duty in the context of a take-home asbestos exposure case. But the issue, properly before this court on appeal, is the issue of foreseeability. We are not appealing the district court's holding that the initial legal determination that a duty would exist, it is the subsequent factual determination that it was unforeseeable as a matter of law to Lockheed, which is appropriately at issue here. Those questions are related to the extent that foreseeability limits the scope of a duty found to be owed. But in Washington, those analyses are handled separately. Correct me if I'm wrong. If the Washington Supreme Court had said no duty, we wouldn't be here. I can't think of a circumstance in which we would be here if the Washington Supreme Court had said that. And if the Washington Supreme Court had said, yes, there is a duty, depending on the facts and circumstances of the case, would we be here? We would, because the issue here- Because you think Judge Zille would ignore that? No, the issue here is that Judge Zille found a duty would exist if the circumstances of the injury were reasonably foreseeable to the defendant at the time of his conduct. We don't take issue with Judge Zille's determination on the existence of a duty. I agree with Judge Zille, based on the Washington Court of Appeals cases that he cited in his order. There's a clear message that a take-home duty exists in Washington. It's his factual determination of the evidence that we take issue with. Although I guess that Lockheed's argument as well, even if Judge Zille was wrong about foreseeability, there's no duty. That's what they're saying, correct? Correct. And for the reasons stated in our reply brief, first of all, we don't think that is appropriately before the court. It's an improper, untimely cross-appeal. It's an indirect cross-appeal. Correct. That's what you're saying. Only what judgment they appealed from. I mean, you appeal from a judgment. We did. Okay, well, they didn't have a different judgment to appeal from, did they? They did not, but our notice of appeal put them on notice that our appeal was only to the fact issue of foreseeability. We specifically said in our notice of appeal, we're not appealing the judge's determination. And they were unhappy with the judgment, so what did they have to appeal? They had to appeal the judge's initial determination that a duty does exist in Washington and take home as best as exposure. You appeal judgments or you appeal individual determinations in the course of conduct of a judge before reaching a judgment? And as I gotta say, I don't hear any basis for your argument that they're required to cross-appeal. We're free to affirm on whatever ground. They're offering a ground. Why can't they do that? That's certainly true, Your Honor, but in order to, okay, that's a correct statement, Your Honor, but in order to affirm on the issue that there was no duty owed, you would have to go against the grant, go against every Washington appellate court who has considered that. Well, that's getting to the law. I'm trying to reject this notion that they had to cross-appeal for us even to consider that. If you're past that, then we can get into what the law is. Okay, well, I would just state that the general rule stated in Ninth Circuit case law is that the court will not consider cross-appeals that have not been timely. And I'm saying this isn't a cross-appeal. Okay. So I'd like to go to the foreseeability question. What do you believe is the correct foreseeability standard under Washington law? Okay, the correct foreseeability standard, Your Honor, is stated in the Berglund case in its progeny. And that statement of law has been often repeated in the years since 1940 when Berglund came out. But the standard is if a defendant knew or should have known of a risk of harm to the plaintiff arising out of its conduct, then the plaintiff's ultimate injury falls within the general field of danger even if the specific injury was improbable, unlikely, not specifically foreseen. My question is this. I've read through Dr. Castleman, is it? Mm-hmm. And I've looked at these references and the injury suffered, as I understand it, is exposure in low doses in a take-home situation or at-home situation or out-of-the-premises situation, correct? True. Okay. And I read through all those references and I can see that some precautions were taken by some companies, perhaps DuPont and others, but what I couldn't really find is something that would put them on notice in terms of that they should have known that there was this low-dose risk exposure removed from the worker him or herself who, of course, you take off your clothes and of course you wash them because they did know at that time that those people were exposed to high doses and you'd get even higher if you kept the stuff and you didn't wash it. What evidence do you think I should look to that best supports your point on should have known? Okay. Your Honor, you're kind of getting to the nub of what I think the issue is, and that is that- Hope so. My compliments. Okay, so the evidence you need to look to is the fact that this record shows that by the 1920s, the Navy was advising Lockheed that asbestos is a health hazard and exposure should be controlled. By the 1930s, asbestos was known to cause disabling and fatal lung disease. By the 1940s, it was accepted to cause lung cancer. Lockheed concedes by the 1950s it was a known industrial toxin on its job site. Correct. And the evidence specific to Lockheed, such as the Walsh-Healy provisions, which is Executive Record 105 through 107, that discusses asbestos as a toxic material, as a health hazard, and as a airborne contaminant hazardous to health. Correct. Now, I'm with you all the way, but that doesn't get me anywhere other than a Lockheed worker definitely would have a very good claim. Sure, and Your Honor, to- And it could be an airborne hazard, but then there's studies about various airborne and different particulates, and home is different than the ambient air, so how do you get from the Lockheed worker notice, which they definitely were on, and I think they've kind of acknowledged that, how do you get from there to the low radiation? And what happened here, of course, is tragic, but I'm trying to make the legal factual link. Sure, the document's called a toxic material and a health hazard, and they don't say only if you encounter it on the dock at Lockheed Shipyard, and they don't say it's only a toxic material if you encounter it in an engine room aboard a destroyer. That is an interpretive gloss that Lockheed is free to argue at trial, but that's a jury argument. But what says it's more than the worker? The worker's exposed to the shipyard, the worker, you don't want to have continued exposure elsewhere. What tells us that the more limited exposure to somebody who's not on the shipyard is going to encounter the asbestos remnants in the home, that that person is at risk? Okay, first of all, that concept of the person in the home being at risk, by Lockheed's own expert's testimony, that concept of industrial hygiene has been around since the early 1900s. Well, for some things. I mean, certainly, if you've got poison ivy, you go home, you rub it against somebody, you're going to spread it. What is there that says that concept with regard to this contaminant that's present? United States Congress, through the Walsh-Healy Act, the Washington Department of Labor and Industries, through their safety standards, the U.S. Navy, through their contracts. The safety standards don't, they don't link it to the home and low-dose radiation, not radiation, but exposure. They don't. In other words, if the rule is you ought to wash off and you ought to have various safety stuff, and you should do the laundry separate and all that at work, that doesn't actually tell you that there's a risk at home. The word bystander, or take home, does not appear in those documents. But when we look at the evidence on summary judgment, we can't put on blinders to the practical and effect and meaning of that evidence. There are provisions in that evidence for things like separate lockers, for contaminated work clothes and street clothes, bathing and changing facilities. But none of that tells you that it's not the worker that you're worried about. And of course, pre-OSHA and provisions that are included in government contracts back then, the focus was on the worker, right? Your Honor, I would respectfully submit that a reasonable inference that can be drawn from things like Walsh-Healy and the Department of Labor and Industry Standards is that those measures exist to prevent the very harm that befell my client. Are those standards, those aren't necessarily specific to asbestos, correct? Well, they're specific to a lot of things, and asbestos is specifically listed in them. Right, but there's many things. And so what you're saying is that of that laundry list of things, and the reasons that one might want to wash your clothes and put a separate locker, that under your theory, any contamination at home by any of those things would pass summary judgment, correct? That's not what I'm saying, Your Honor. I'm saying that we're not talking about every potential factual scenario out there. We're talking about this case and these facts. And on these facts, I'm saying that a reasonable juror could conclude that an immediate family member of a Lockheed employee who came into direct, repeated, close contact with workplace toxin and brought into the home on the close could be a reasonably foreseeable victim of asbestos exposure. Now, there very well may be other factual scenarios, like the babysitter or the dry cleaner that comes into infrequent contact with the clothing, where the circumstances would be so highly improbable and outside the realm of foreseeability that those would be unforeseeable as a matter of law. Hard to know what the difference would be to the babysitter and the home if you didn't have any notice, though. Well, I guess I'm trying to, what do you mean didn't have any notice? Well, you're saying, well, those might be too far afield, those other scenarios. But they would be equally probable if you can infer simply from the fact that you should take safety measures that there could be out-of-factory contamination, correct? Right, I think, are you referring to perhaps the discussion in the district court's order regarding the lack of study about this particular hazard? Well, not just particular, but under your theory, I don't know how one would distinguish between the casual babysitter or being at home. Okay, well, under Washington law, Your Honor, we leave that to the jury to draw that line of foreseeable scope of the harm. Do you want to save the remaining time? I will, I'll save my one minute, thank you. All right. Thank you. Good morning, Your Honors. Jeff Dunbar, appearing for Lockheed Shipbuilding Company, the appellee in this instance. Your Honor, in this case, the district court's summary judgment determination in favor of Lockheed Shipbuilding Company should be affirmed. Simply put, there is no evidence in the record upon which a reasonable juror or jury could conclude that somehow Lockheed Shipbuilding Company should have foreseen risks that were not even identified by the rest of the world's medical and scientific communities at the time of the exposure here. I wanted to address a few quick points. First of all, Your Honor, I'm not familiar with the requirement that we appeal an order granting summary judgment in favor of Lockheed Shipbuilding. I've never heard of that concept, and this court has many times said, you don't have the right to do so. You're not aggrieved from the court's determination. We're told. Don't argue, but I don't know that that's what you want to spend your time talking about. I don't. In terms of the foreseeability issue, I think the panel has sort of hit it right on the head here. In order for something to be foreseeable, in other words, something that was known or should have been known, there has to be something. Here, there was nothing presented to the trial court. In fact, it was just the opposite. The only thing that was presented through plaintiff's expert testimony was testimony that these risks that supposedly Lockheed Shipbuilding Company should have known and warned against or prevented in some other way were not even known to the rest of the world's medical and scientific community until the 1960s. Some things were known. The risk to the workers, you're not contesting with regards to the risk of the workers. That's not an issue for this appeal. And you're not contesting with regard to the risk of the workers of continued exposure at home. If they carry things and they're supposed to try not to take the contaminants with them to their home where they will continue to be exposed. That's not an issue in this appeal. Is it a big leap that other people shouldn't be exposed to those contaminants either? Yes, it is, because the rest of the world's medical and scientific communities had no knowledge that that posed any risk of injury or danger. Dr. Castleman himself clearly states in his report this is at the Supplemental Excerpts of Record 277, studies on the occurrence of asbestos disease, not just mesothelioma, asbestos disease, that included family members of asbestos exposed workers were not published until the 1960s. That timeframe, that testimony, the notice, if you will, I think that's the phrase used by the panel in its questions before, is all agreed upon. It's the 1960s, at a minimum 1960, and I think it's clearly 1965, which would have been seven years after the last potential hypothetical exposure that could have conceivably occurred in this instance. It is manifestly unreasonable to expect Lockheed Shipbuilding Company to race the rest of the world's medical and scientific community to these conclusions so they can warn against them or prevent them. Now, somebody mentioned earlier that there were other companies in other cases that were mentioned that may have done other things. There's no suggestion in the record at all that Lockheed Shipbuilding Company was aware of those practices. There's no even contention that Lockheed Shipbuilding Company knew of the specific risks posed to someone like Ms. Hoyt here. That's been conceded. So that's what you're left with, notwithstanding, you know, the whole discussion of foreseeability and as it interplays with duty, notwithstanding this discussion of the general field of danger cases, you still have to have something in the record upon which the jury can base its liability determination on. The argument presented here today is identical to the argument that Judge Zille was presented with in the district court below. That argument is, well, there was a statutory scheme arguably in place. There's some old documents we have here. It talks about asbestos and how you should try to limit the exposure of asbestos to workers at your property. These are workplace regulations designed for workers that we should just be allowed to go argue to the jury that, well, that was really intended for people that never entered the property that were never workers. That was the legislative intent of those bodies, whoever they may be, that they were specifically protecting other people outside the property, outside the premises, outside the employee. There's no basis. I mean, I think what they're saying is that everybody knew you should take all kinds of protections because of asbestos and it included clothing and that it doesn't take a big flying leap to say if you're gonna protect that person from all this asbestos that's all over his clothes, if you just substitute and take it home, you've just replicated the problem. And I think they're saying that there's enough there that the jury could draw a reasonable inference. And so let it go to trial and cast your chips where they may. A reasonable inference has to have a basis, Your Honor, aside from sheer speculation and aside from things that are directly contrary to all the evidence that you've presented to the trial court. One study identified, and I confess I'm flipping through and I can't find my reference to it, but something from the 1950s with regard to air pollution, not somebody who's present in a shipyard or other plant, but air pollutions in a given community being connected to higher rates of cancer, suggesting arguably that even low-level exposure might be a source of concern. Why isn't that evidence sufficient to at least permit the jury to decide whether it was known at the time? Because it's factually different, number one. It doesn't involve the secondary or take-home exposure sort of modicum, if you will, that occurred here. Number two, I'm not- Wouldn't be greater exposure than what's taken home in the household, would it? The inference I'm drawing, and I confess I can't find my reference now, the inference I'm drawing is that kind of a generic air pollution exposure would have to be, by definition, fairly low-level. I think what Your Honor is referring to is the Wagner study that was in 1960 that studied the effects of people who lived in South Africa next door to a chrysotillite asbestos mine, I believe, Your Honor. It could be. I apologize, I can't find it. That's a totally different animal and species altogether. I mean, we're not talking about South Africa chrysotillite asbestos, which is much more potent, and we don't have any control over that, and that wasn't even disseminated until at least 1960, and it was considered a case study, even by plaintiff's experts, that really don't draw anything other than a coincidence. Here, what you have is, undisputedly, nothing in the record that would have put Lockheed Shipbuilding Company on notice of the harm or injury to Ms. Hoyt that occurred here. It wasn't until 1965, with the Newhouse and Thompson study, that those risks were first reported and known, or knowable, and that's, again, that's not us, Your Honor, saying that those are the plaintiff's experts. These are Ms. Hoyt's experts. This is Dr. Hammer, this is Dr. Castleman, this is their industrial hygienist, John Templin, and others who are considered world-renowned in this category all agree with that as the timeframe. Briefly, Your Honors, that the general field of danger cases and its discussions, I would submit, are inopposite and not helpful for the Court here. All of those cases, save for one, dealt with the child rape or child sexual assault cases that were in custodial arrangements. Those cases all clearly articulate that, and as we pointed out in our briefing, those injured persons were clearly foreseeable, unquestionably. They were in a custodial environment, after all. The Bergland case is also a case which I would suggest doesn't help because there's no question in that case that the county who was sued had been repeatedly put on notice of the danger of erecting a bridge, apparently with no sidewalk, where people could be injured as they walked across the bridge. Those cases aren't helpful, and they overlook altogether the fundamental failure in this case to produce anything to indicate that a jury would reasonably conclude that Lockheed Shipbuilding Company somehow should have known about risks that the rest of the world's medical and scientific community, indisputably, did not discover and disseminate until years later. That is a standard upon which there is no support in Washington law to impose against a premises liability defendant like Lockheed Shipbuilding Company under any reasonable negligent standard. One of your honors pointed out that this is a tragic situation. Well, tragedy does not make legal liability, and for the reasons we pointed out in the brief, Ms. Hoyt has remedies that she's pursued against 22 other manufacturers of products and suppliers and distributors. So, just to address your honors comment, she has had her day in court, so to speak. It doesn't make it any less tragic, one way or the other, however it comes out legally. It does not, your honor, and I would never suggest to the contrary. Your honor, I guess just in closing. Well, this is a matter of Washington law. Should we allow the Washington Supreme Court to weigh in on this? You know, your honor, the answer is no, because this is really an evidence record case. I mean, there's no evidence in the record upon which a jury could reasonably conclude that, again, Lockheed Shipbuilding Company should have acted, I guess with omniscience here, to identify a risk of harm to persons that the rest of the world's medical and scientific community had not yet even discovered, disseminated. I hear what you're saying, but I don't know that I'd be shocked if a jury came back with a verdict in favor of plaintiff. And I guess that's underscores the... That may be the tragedy element, but it's there. That underscores the importance of why you're not allowed to just argue what plaintiff is arguing here without any supporting evidence whatsoever and no factual support in the record. That underscores the importance and the rationale for why there is summary judgment. It underscores the importance of Washington law that says, yeah, you know, there has to be some element of foreseeability, some check before you just get to go argue that members of the jury, certainly they could have figured this out faster, couldn't they have? I mean, that's not appropriate under the law. That's decision-making, just pandering to the jury without any support whatsoever. You have to have something upon which the jury can reasonably draw that conclusion. There's nothing in the record here. In fact, all of the plaintiff's experts said directly to the contrary. Would it be a closer call if there was evidence in the record that particular practices or notice or information was known to Lockheed about these types of risks? Sure, but that's not in the record here. There's no evidence to support that. It may have been present in other cases for DuPont or the other companies that are, I guess, mentioned in the briefing, but that's not the case here. So in summary, your honors, Judge Zilley correctly ruled that this risk was unforeseeable as a matter of law. No reasonable jury could conclude otherwise based on this record, based on these facts. To reverse the district court's ruling on that issue is simply to impose a standard of liability upon Lockheed that not only operates with hindsight, but operates with hindsight coupled with omniscience and omnipotence. And that's not the standard in Washington. It's not the standard anywhere else. And we respectfully request that the court affirm the district court's grant of summary judgment. So unless the panel has any questions, I will see to balance my time. Thank you. I have a short time. Your honor, the racing the medical community argument incorrectly conflates the concept of foreseeability with the separate concept of causation. If the issue below had been causation in reference to epidemiologic studies may indeed have been relevant, but the issue below was foreseeability. And nowhere is there a Washington case or rule that holds or even remotely suggests that I have to come armed with an epidemiologic study to create a fact issue on foreseeability. If such a rule existed, it would overturn 70 years of Washington Supreme Court case law that is held over and over again. That if the risk of harm was reasonably foreseeable, then the precise harm at issue, whether it be mesothelioma or- Risk of harm to whom? Risk of harm to my clients, the immediate family member in the home, if it was reasonably foreseeable to Lockheed in the- But what's the basis for saying that somebody at home is at risk? And this is what we've come back to. What's the best evidence you have that at the time in question, the defendant should have been aware of the risk to somebody at home? Okay, the Walsh-Healy Act that's specifically in the contracts for my client's husband's ships that he worked on. They call asbestos a toxic material and contain specific provisions to prevent the contamination of street clothes with work clothes by providing separate lockers. I respectfully submit a reasonable inference from that evidence is that it's trying to protect or prevent the very harm that befell my client. And even if you and I disagree on that, your honor, I think a juror could reasonably draw that inference from that evidence. Also, the Washington Department of Labor and Industries, they had similar standards. And I think it's important to note that these standards were put in place without the benefit of an epidemiologic study. These entities, such as the DLI, Walsh-Healy, the Navy, Congress, they were concerned about and foreseeing a risk of harm from take-home exposure without the benefit of a published scientific study. And so nowhere in Washington law is a study required. It would go immediately. And also I think that it reflects that to require such a study requirement would be extraordinarily prejudicial in cases such as this one involving a rare disease. Epidemiologic studies don't simply and conveniently materialize. They take time, effort, expertise, and scientific resources. And my client and others like her shouldn't be penalized simply because they have the misfortune of contracting a disease that doesn't have broad scientific appeal. Thank you. Thank you. I'd like to thank both counsel for your argument and also for the briefing in this case. The case just argued, Ahoyt v. Lockheed is submitted and we're adjourned for the morning.
judges: Hawkins, McKeown, Clifton